01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09 LARK HOLLAND,                              )   CASE NO. C04-2349-RSM
                                              )
10      Plaintiff,                            )
                                              )
11 v.                                         )   REPORT AND RECOMMENDATION
                                              )   RE: SOCIAL SECURITY
12 JO ANNE B. BARNHART, Commissioner          )   DISABILITY APPEAL
   of Social Security,                        )
13                                            )
        Defendant.                            )
14 _____ )

15      Plaintiff Lark Holland proceeds through counsel in his appeal of a final decision of the

16 Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

17 plaintiff's application for Disability Insurance (DI) for the period from January 16, 2001 through

18 November 4, 2001 after a hearing before an Administrative Law Judge (ALJ).

19      Having considered the ALJ's decision, the administrative record (AR), and all memoranda

20 of record, it is recommended that the Commissioner be AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

22      Plaintiff was born on XXXX, 1952.[1]  He has a high school education and previously

23 worked in security, plastics fabrication, and cooking.  Plaintiff suffered heart attacks on November

24

25

26      [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01  27, 2000 and January 16, 2001.  After each attack, plaintiff unsuccessfully attempted to return to
02  work.

03       Plaintiff filed an application for DI benefits based on his heart impairment on February 11,
04  2002, alleging a disability onset date of June 15, 2001.  He later amended the onset date to January
05  16, 2001.  Plaintiff's application was denied initially and on reconsideration, and plaintiff timely
06  requested a hearing.

07       ALJ Verrell Dethloff held a hearing on September 24, 2003. (AR 344-96.)  He heard
08  testimony from plaintiff, medical expert Alvin Thompson, and vocational expert Leta Berkshire.
09  On November 5, 2001, ALJ Dethloff issued a decision granting plaintiff's application for disability
10  beginning November 5, 2001, but not prior to that date.  (AR 21-24.)

11       Plaintiff appealed the ALJ's decision to the Appeals Council, which granted his request for
12  review.  (AR 334-36.)  However, on September 17, 2004, the Appeals Council also found plaintiff
13  disabled as of November 5, 2001, but not prior to that date.  (AR 9-12.)  Plaintiff appealed this
14  final decision of the Commissioner to this Court.

15                                    **JURISDICTION**

16       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

17                                    **DISCUSSION**

18       The Commissioner follows a five-step sequential evaluation process for determining
19  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must
20  be determined whether the claimant is gainfully employed.  While the ALJ found that plaintiff had
21  engaged in substantial gainful activity until November 5, 2001, the Appeals Council later
22  concluded that plaintiff had not engaged in substantial gainful activity since January 16, 2001, the
23  alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe
24  impairment.  The ALJ and Appeals Council found plaintiff's ischemic heart disease a severe
25  impairment.  Step three asks whether a claimant's impairments meet or equal a listed impairment.
26  The ALJ and Appeals Council found that plaintiff's impairment did not meet or equal a listed

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01   impairment.  If a claimant's impairments do not meet or equal a listing, the Commissioner must

02   assess residual functional capacity (RFC) and determine at step four whether the claimant has

03   demonstrated an inability to perform past relevant work.  The ALJ and Appeals Council found that

04   plaintiff had the RFC to perform sedentary work, but could not perform his past relevant work.

05   If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the

06   Commissioner to demonstrate at step five that the claimant retains the capacity to make an

07   adjustment to work that exists in significant levels in the national economy.  The ALJ and Appeals

08   Council applied the Medical-Vocational Guidelines and found plaintiff disabled only as of

09   November 5, 2001.[2]

10          This Court's review of the ALJ's decision is limited to whether the decision is in

11   accordance with the law and his findings supported by substantial evidence in the record as a

12   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

13   than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

14   mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

15   (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

16   decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

17   2002).

18          In this case, plaintiff argues that the ALJ and/or Appeals Council failed to properly assess

19   his RFC, improperly relied on the Medical-Vocational Guidelines at step five, and improperly

20   rendered an adverse credibility finding.  He requests that his testimony be credited and this matter

21   remanded for a payment of benefits as of January 16, 2001.  The Commissioner argues that the

22   decision is supported by substantial evidence and should be affirmed.  For the reasons described

23   below, the undersigned agrees with the Commissioner that the decision should be affirmed.

24

25          ───────────────────

26          [2] Because the ALJ found that plaintiff had engaged in substantial activity prior to
     November 5, 2001, only the Appeals Council applied the Medical-Vocational Guidelines to this
     earlier time period.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01                                              Credibility

02          Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

03    reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see*

04    *also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In finding a social security

05    claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently

06    specific findings, supported by substantial evidence. "General findings are insufficient; rather, the

07    ALJ must identify what testimony is not credible and what evidence undermines the claimant's

08    complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "In weighing a claimant's

09    credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

10    testimony or between his testimony and his conduct, his daily activities, his work record, and

11    testimony from physicians and third parties concerning the nature, severity, and effect of the

12    symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

13    1997).

14          Here, the ALJ found plaintiff's assertions concerning his ability to work credible. (AR 23.)

15    However, in further considering plaintiff's credibility, the Appeals Council found as follows:

16          The Appeals Council considered the claimant's statements concerning the subjective
            complaints (Social Security Ruling 96-7p). The claimant had a medically determined
17          condition which could reasonably be expected to produce the symptoms alleged for
            the period before November 5, 2001. However, the subjective complaints are not
18          fully credible for that period. Although the claimant could not continue on his work
            attempts in April and September 2001, these jobs required greater than sedentary
19          exertion. The claimant indicated in February 2002 that he cooked, shopped, carried
            groceries, cleaned his home, and took daily walks for 20 to 30 minutes. He also
20          alleged various capabilities including lifting of 20 pounds which are not inconsistent
            with the ability to do sedentary work (see Exhibit 3E). Opinions provided by the
21          medical expert at the hearing and the claimant's treating source (Exhibit 10F) are also
            consistent with an ability to do sedentary work. Therefore, the Appeals Council has
22          adopted the Administrative Law Judge's findings concerning the claimant's residual
            functional capacity for the entire period at issue.

23
            The representative has contended that the treating source reported that the claimant's
24          disability began on January 16, 2001, with an expectation of return to work on April
            1, 2001 (Exhibits 9E and AC-5). Although the claimant's work attempt failed by June
25          2001, this was at a greater exertional level than sedentary which this same source
            reported later the claimant was capable of performing. While the claimant may not
26          have been able to perform sedentary work for a brief period beginning in January

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01        2001, he was not precluded from sedentary work for a continuous period of at least

02        12 months.

03  (AR 10.)

04        Plaintiff alleges that the Appeals Council failed to provide clear and convincing reasons for

05  rejecting his testimony, and failed to give sufficient weight or even provide any significant

06  discussion as to his subjective complaints.  He asserts that the Appeals Council selectively read

07  and misconstrued his February 2002 statements, noting he also said he was careful not to do too

08  much because he tired quickly, would need fifteen minutes rest after sitting for an hour and a half,

09  and, while he used to do yard work, help clean the house, and take out the trash, he now hardly

10  did anything.  (AR 85-86.)  He also notes that, in any event, these February 2002 statements

11  occurred well after his 2001 treatment for two heart attacks, when his condition was much more

12  severe.  Plaintiff notes that rather than opining that he could perform sedentary work in 2001, his

13  treating physician, Dr. Gary Oppenheim, removed him from the workforce due to his cardiac

14  impairment.  ( *See* AR 112-13.)  Plaintiff asserts that, given the failure to properly assess his

15  testimony, it should be credited as true.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

16        Although not reciting all of plaintiff's February 2002 statements, the Appeals Council

17  accurately recited the statements relied upon in the decision.  ( *See* AR 10, 84-88.)  Also, the

18  Appeals Council accurately noted that both testimony from the medical expert, Dr. Thompson,

19  and the opinion of Dr. Oppenheim were consistent with sedentary work.  (*See* AR 302, 305 (April

20  17, 2002 letter from Dr. Oppenheim stating that plaintiff was "capable of light capacity with

21  ordinary desk type job with no lifting of more than 20 lbs. and no distance walking."), AR 309

22  (February 4, 2003 letter from Dr. Oppenheim stating that plaintiff "is capable of performing a job

23  where he can sit for six hours per day with normal breaks and mild activity."), and AR 385 (Dr.

24  Thompson testified that plaintiff could perform sedentary work.))  While this evidence may not

25  directly relate to the period immediately after plaintiff's heart attacks, it was not irrelevant to the

26  credibility assessment.

01    In any event, the Appeals Council also appropriately relied on evidence specifically related

02 to the months following plaintiff's heart attacks.  The Appeals Council noted that plaintiff's 2001

03 work attempts involved greater than sedentary exertion.    It also made reference to Dr.

04 Oppenheim's expectation, in March 2001, that plaintiff would be able to return to work in April

05 2001 (*see* AR 112), supporting the conclusion that plaintiff was not precluded from sedentary

06 work for a continuous period of at least twelve months and, therefore, not disabled under Social

07 Security regulations.  *See* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result

08 in death, it must have lasted or must be expected to last for a continuous period of at least 12

09 months.")

10    Plaintiff fails to demonstrate error in the Appeals Council's credibility assessment.  Instead,

11 the record shows that the Appeals Council provided clear and convincing reasons for finding

12 plaintiff's testimony not fully credible.

13                                RFC Assessment

14    Plaintiff raises several arguments relating to the RFC assessment in his case.  However, for

15 the reasons described below, plaintiff fails to demonstrate error in the RFC assessment of the ALJ

16 and Appeals Council.

17 1.    Social Security Ruling 96-8p

18    Plaintiff first argues that both the ALJ and Appeals Council failed to properly assess his

19 RFC under Social Security Ruling (SSR) 96-8p.  Pursuant to that rule, the ALJ must identify

20 plaintiff's functional limitations or restrictions and assess his work-related abilities on a function-

21 by-function basis, including a narrative discussion.  *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-

22 8p.  SSR 96-8p indicates that only after this function-by-function assessment may the RFC be

23 expressed in terms of the exertional levels of work, such as sedentary or light.  Plaintiff asserts that

24 the ALJ and Appeals Council failed to perform a function-by-function analysis and, instead, simply

25 deemed him limited to sedentary work.  (AR 22-23.)  He further states that the Appeals Council

26 failed to analyze his non-exertional limitations and simply limited him to no lifting or carrying over

01  ten pounds, and no standing or walking for more than two hours. (AR 11.)

02      The Commissioner notes that SSR 96-8p implicates no less than fifty-four work functions

03  and argues that, rather than requiring a discussion of all of plaintiff's abilities on a function-by-

04  function basis, the ALJ was required to explain how the evidence supported his conclusions. *See*

05  SSR 96-8p ("The RFC assessment must include a narrative discussion describing how the evidence

06  supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

07  evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the

08  individual's ability to perform sustained work activities in an ordinary work setting on a regular

09  and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and

10  describe the maximum amount of each work-related activity the individual can perform based on

11  the evidence available in the case record.") The Commissioner maintains that the ALJ met this

12  requirement and rendered a proper RFC assessment.

13      According plaintiff the benefit of the doubt and liberally construing the evidence of record,

14  the ALJ determined that plaintiff could perform sedentary work. (AR 22.) The ALJ noted Dr.

15  Thompson's testimony that, while plaintiff "would likely be limited to sedentary work, [he] could

16  likely manage to walk on the level adequately[,]" and "should do almost no lifting." (*Id.*) The

17  Appeals Council adopted the ALJ's RFC assessment "for the entire period at issue" and concluded

18  that plaintiff had the ability to perform sedentary work prior to November 5, 2001. (AR 10.) As

19  recognized by plaintiff, the Appeals Council further addressed plaintiff's functional limitations,

20  specifically finding him limited to no lifting or carrying over ten pounds, and to no standing or

21  walking for more than two hours. (AR 11.)

22      The above described assessment sufficiently addresses plaintiff's work related limitations

23  on a function-by-function basis pursuant to SSR 96-8p. The Court, therefore, disagrees that the

24  ALJ and Appeals Council simply deemed plaintiff limited to sedentary work. Moreover, because

25  the Appeals Council provided clear and convincing reasons for finding plaintiff's subjective

26  complaints not fully credible, it did not err in failing to specifically address in its RFC assessment

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  the non-exertional limitations testified to by plaintiff.

02  2.    Medical Expert's Testimony

03       Plaintiff next argues that the Appeals Council's conclusion that he had the RFC to perform

04  the full range of sedentary work is contradicted by the medical expert's testimony that he "would

05  not clear him for security-type work or work that potentially means he has to move fast or walk

06  up stairs[.]"  (AR 385.)  However, neither the ALJ, nor the Appeals Council found plaintiff

07  capable of performing his past security work, and sedentary work requires only occasional

08  walking, with no mention of walking fast or up stairs.  *See* 20 C.F.R. § 404.1567(a).  Therefore,

09  the sedentary classification is not contradicted by the medical expert's testimony.

10  3.    Low Stress Limitation

11       Finally, plaintiff asserts that he would require a low stress position – a limitation never

12  addressed by the ALJ or Appeals Council in assessing his RFC.  In support, plaintiff points to the

13  opinion of Dr. Oppenheim.  (AR 309.)  However, while Dr. Oppenheim did note that plaintiff's

14  chest discomfort was increased by both physical and emotional distress, he did so in relation to

15  plaintiff's inability to perform in a security guard position.  *Id*.  He went on to state: "However,

16  he is capable of performing a job where he can sit for six hours per day with normal breaks and

17  mild activity."  *Id*.  (*See also* AR 302, 305 (on April 17, 2002, Dr. Oppenheim opined that plaintiff

18  was "capable of light capacity with ordinary desk type job with no lifting of more than 20 lbs. and

19  no distance walking."))

20       Plaintiff notes that Dr. Oppenheim rendered this opinion in February 2003, well after

21  plaintiff's January 16, 2001 heart attack.  However, as noted above, Dr. Oppenheim also earlier

22  gave plaintiff an April 2001 expected date of release to work.  (AR 112.)  *See also* 20 C.F.R. §

23  404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be

24  expected to last for a continuous period of at least 12 months.")  In fact, there does not appear

25  to be any evidence that Dr. Oppenheim would have found plaintiff incapable of performing in a

26  sedentary position following his release to work.

01                                    <u>Medical-Vocational Guidelines</u>

02          Plaintiff argues that the Commissioner improperly relied on the Medical-Vocational

03   Guidelines, or "grids," at step five.  The Commissioner can satisfy the step five burden by either

04   calling a vocational expert or applying the grids.  *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th

05   Cir. 1999).  However, use of the grids would not be appropriate where "non-exertional limitations

06   significantly limit the range of work permitted by [] exertional limitations." *Id.* at 1101-02.  In that

07   event, the ALJ would be required to call a vocational expert to establish whether a claimant was

08   disabled.  *Id.* at 1102.

09          Here, while the ALJ did call a vocational expert at the hearing, he found plaintiff disabled

10   under Medical-Vocational Guideline 201.14 for the period beginning November 5, 2001.  (AR

11   22).  *See also* Rule 201.14, 20 C.F.R. Part 404, Subpt. P, App. 2.  Although this rule would not

12   direct a finding of disability until plaintiff turned fifty – in January 2002 – the ALJ applied the rule

13   "in a non-mechanical manner in keeping with the regulations."  (AR 22.)  The Appeals Council

14   adopted the ALJ's findings for the period beginning November 5, 2001.  (AR 9-12.)  However,

15   the Appeals Council further found plaintiff not disabled prior to November 5, 2001 pursuant to

16   Medical-Vocational Guideline 201.21.  (AR 11.)  *See also* Rule 201.21, 20 C.F.R. Part 404,

17   Subpt. P, App. 2.

18          Plaintiff maintains the inapplicability of both grid rules given his significant non-exertional

19   limitations, including pain, shortness of breath, and fatigue.  The Commissioner asserts that all

20   impairments associated with plaintiff's heart disease were thoroughly and carefully discussed at

21   the hearing and evaluated by the ALJ and Appeals Council.  She points to plaintiff's own

22   testimony that chest pains, shortness of breath, and fatigue occurred when he overextended

23   himself, and further notes that Dr. Oppenheim found him capable of performing light work.  (AR

24   302, 305, 352, 355-56.)  The Commissioner asserts that there is no credible evidence of any

25   significant non-exertional limitations precluding plaintiff from performing the full range of

26   sedentary work, or precluding the use of the grids.  In response, plaintiff asserts that his testimony

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01 and the testimony of the medical expert support the conclusion that he suffered non-exertional

02 limitations both when he exerted himself and while at rest.  (AR 356-57, 375-77.)  Plaintiff also

03 again notes that Dr. Oppenheim's opinions as to his ability to work were rendered after he had

04 received more than a year of treatment.  (AR 302, 305, 309.)

05     Again, as discussed above, the Appeals Council provided clear and convincing reasons for

06 finding plaintiff's testimony – including that related to any alleged non-exertional limitations – not

07 fully credible.  Moreover, while the medical expert recognized plaintiff's testimony as to the

08 presence of non-exertional symptoms at rest, he nonetheless maintained that plaintiff could

09 perform sedentary work.  (AR 375-77.)  Additionally, and also as noted above, Dr. Oppenheim

10 did not believe plaintiff's impairments in 2001 would last for a continuous period of twelve

11 months, and later found plaintiff capable of light and sedentary work.  Consequently, plaintiff fails

12 to demonstrate that the Commissioner improperly relied on the Medical-Vocational Guidelines at

13 step five.

14                                **CONCLUSION**

15     For the reasons set forth above, the Commissioner's decision in this case should be

16 affirmed.  A proposed Order accompanies this Report and Recommendation.

17     DATED this  2nd  day of June, 2005.

18

19                                  Mary Alice Theiler
                                     United States Magistrate Judge

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10